# BROWN & CONNERY, LLP

ATTORNEYS AT LAW
360 HADDON AVENUE
WESTMONT, NEW JERSEY 08108
(856) 854-8900
FAX (856) 858-4967

Jonathan L. Triantos, Esq.
jtriantos@brownconnery.com

October 16, 2018

**VIA ELECTRONIC FILING**
Honorable Karen M. Williams, U.S.M.J.
Mitchell H. Cohen Federal Courthouse
1 John F. Gerry Plaza
4th & Cooper Streets
Camden, New Jersey 08101

    Re:  **The Cooper Health System v. Maxis Health System**
           **Civil Action No.: 1:18-CV-00702-RMB-AMD**

Dear Judge Williams:

    We represent Plaintiff/Counterclaim Defendant, The Cooper Health System, a New Jersey Non-Profit Corporation ("Cooper"), in the above-referenced action.

    As requested by Your Honor following the October 11, 2018 oral argument on Cooper's pending Motion for Leave to file an Amended Complaint, enclosed please find a redlined copy of Cooper's proposed First Amended Complaint.

    Thank you for Your Honor's courtesies in this matter.

                              Respectfully submitted,

                              BROWN & CONNERY, LLP

                              Jonathan L. Triantos

Enclosure
cc:    Gerald E. Burns, Esq. (*via electronic filing*)
        Christopher J. Dalton, Esq. (*via electronic filing*)
        Argia J. DiMarco, Esq. (*via electronic filing*)

**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire
Joseph T. Carney, Esquire
Jonathan L. Triantos, Esquire
360 Haddon Avenue
Westmont, New Jersey 08108
(856) 854-8900
*Counsel for The Cooper Health System*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE COOPER HEALTH SYSTEM, A NEW JERSEY NON-PROFIT CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> MAXIS HEALTH SYSTEM and TRINITY HEALTH, <br><br> Defendants, <br><br> -and- <br><br> MAXIS HEALTH SYSTEM and TRINITY HEALTH, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> THE COOPER HEALTH SYSTEM, A NEW JERSEY NON-PROFIT CORPORATION, <br><br> Counterclaim Defendant. | Case No.: 1:18-cv-00702-RMB-AMD <br><br><br> **THE COOPER HEALTH SYSTEM'S FIRST AMENDED COMPLAINT** ~~FOR DECLARATORY JUDGMENT~~ **AGAINST MAXIS HEALTH SYSTEM AND TRINITY HEALTH AND JURY DEMAND** |

Plaintiff, The Cooper Health System, a New Jersey Non-Profit Corporation ("Plaintiff" or "Cooper"), by and through its attorneys, files this Complaint ~~for~~

~~Declaratory Judgment~~ and states the following claims against Defendant~~s~~, Maxis Health System (~~"Defendant" or~~ "Maxis"), and Trinity Health ("Trinity") (Maxis and Trinity may collectively be referred to as "Defendants") (Cooper, ~~and~~ Maxis, and Trinity may collectively be referred to as "Parties"):

## NATURE OF ACTION

1. Cooper brings this action to enforce its rights under the Letter of Intent ("LOI") between ~~the Parties~~Cooper and Maxis dated August 30, 2017, and fully executed on August 31, 2017, to recover Cooper's payment of $15 million held in escrow, together with all accumulated interest. As set forth more fully below, Cooper is entitled to such a declaration because it decided not to proceed with the proposed transaction negotiated between ~~the parties~~Cooper and Maxis, first, due to the identification of numerous Due Diligence Issues, as defined by the LOI, and second, Maxis' breach of the LOI.

2. Cooper also brings this action to recover the expenses it incurred, in excess of $5 million, through entering into the LOI with Maxis and proceeding through an exhaustive due diligence process. As set forth more fully below, Cooper is entitled to such relief because it incurred the expenses after it was fraudulently induced to enter into the LOI and proceed through an exhaustive due diligence process by way of Maxis and Trinity's material omissions concerning various unlawful and/or improper non-compliance issues, federal audits and investigations, and severe liabilities of Our Lady of Lourdes Health Care Services, Inc. ("Lourdes") and St. Francis Medical Center ("St. Francis"), which Cooper originally endeavored to acquire as part of the proposed transaction.

## PARTIES

3. Plaintiff, Cooper, is a New Jersey non-profit corporation with its principal place of business at One Cooper Plaza, Camden, New Jersey 08103.

4. Defendant, Maxis, a division of Trinity Health, is a Pennsylvania non-profit corporation and ~~that~~ is the sole corporate member of two New Jersey non-profit corporations, ~~Our Lady of Lourdes Health Care Services, Inc.~~ ("Lourdes"), located and doing business in Camden, New Jersey, and St. Francis ~~Medical Center ("St. Francis")~~, located and doing business in Trenton, New Jersey. Upon information and belief, Maxis' principal place of business is located in Pennsylvania.

~~4.~~5. Defendant, Trinity, is a Michigan non-profit corporation and is the parent corporation of Maxis. Upon information and belief, Trinity's principal place of business is located in Michigan.

## JURISDICTION AND VENUE

~~5. This Court has subject matter jurisdiction over this action pursuant to N.J.S.A 2A:16-52 and N.J. Ct. R. 4:3-1(a) (4). This Court has personal jurisdiction over Defendant because Defendant conducts business in this State and a substantial part of the events giving rise to this transaction took place within this jurisdiction.~~

~~6. Venue is proper in this County pursuant to N.J. Ct. R. 4:3-2(a) because the cause of action arose in this County, and because, pursuant to N.J. Ct. R. 4:3-2(b), Defendant is a resident of this County.~~

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

7. This Court has personal jurisdiction over Defendants because Defendants are corporations authorized to conduct business in the State of New Jersey, Defendants regularly conduct business in the State of New Jersey, Defendants have sufficient minimum contacts with the State of New Jersey, and/or a substantial portion of the events, omissions, and damages giving rise to the claims set forth herein occurred in the State of New Jersey.

8. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because a substantial portion of the events, omissions, and damages giving rise to the claims set forth herein occurred in the District of New Jersey.

## FACTUAL BACKGROUND

### Preliminary Discussions

9. In or around December 2016, the Parties commenced preliminary discussions regarding a potential transaction, under which Cooper would acquire all of Maxis' membership rights, title, and interests held in Lourdes and St. Francis, and under which Cooper would become the sole corporate member of Lourdes and St. Francis ("Transaction").

7.10. Between December 2016 and August 31, 2017, the Parties continued discussions regarding the Transaction.

## Letter of Intent

8.11. On August 31, 2017, the Parties Cooper and Maxis fully executed a Letter of Intent ("LOI") dated August 30, 2017 setting forth a proposed framework for the continued negotiation of the a tTransaction. by which Cooper would acquire all of Maxis' membership rights, title, and interests held in Lourdes and St. Francis, and Cooper would become the sole corporate member of Lourdes and St. Francis ("Transaction"). LOI (Ex. A to Cooper's original Complaint filed December 18, 2017) ¶ 1.

9.12. As set forth in the LOI, the Parties Cooper and Maxis agreed to negotiated in good faith to agree upon regarding terms of a Membership Transfer Agreement to effectuate the proposed Transaction. Id. ¶ 2.

10.13. As part of their continued good faith negotiations, the Parties Cooper and Maxis further agreed to cooperate with the other's due diligence investigations. Id. ¶ 4 (due diligence provision). Maxis agreed to provide such financial, operational, and other due diligence information consistent with a transaction of this type; Cooper agreed to cooperate with Maxis' due diligence carried out to ensure Cooper had an adequate plan of financing in place to complete the Transaction. Id.

11.14. Pursuant to the terms of the LOI, the Parties Cooper and Maxis anticipated that they would complete their due diligence within seventy-five (75) days from the date of the LOI (while the Parties Cooper and Maxis were concurrently negotiating the Membership Transfer Agreement). Id. The LOI further provides that either Party Cooper or Maxis could extend the due diligence period and date for signing the Membership

BROWN & CONNERY, LLP
Westmont, NJ 08108

Transfer Agreement for an additional fifteen (15) business days upon written notice to the other party. Id.

~~12.~~15. Maxis further agreed that during the term of the LOI, it would terminate any ongoing discussions with any other party pertaining to a transaction in New Jersey, and further would refrain from soliciting, negotiating, or otherwise entering into any joint venture, partnership, merger, consolidation, affiliation, sale, or any other arrangement or relationship in New Jersey similar to the Transaction negotiated between Maxis and Cooper. Id. ¶ 5 (exclusivity provision).

~~13.~~16. In consideration of Maxis agreeing to the exclusivity provision set forth in Paragraph 5 of the LOI, Cooper agreed to make a good faith deposit of $15 million ("Escrow Fund") into an interest-bearing escrow account held by Bank of America pursuant to a separate Escrow Agreement executed by ~~the Parties~~Cooper and Maxis. Id. ¶ 6 (escrow deposit provision).

~~14.~~17. Pursuant to Paragraph 6 of the LOI, Cooper was entitled to a return of the initial escrow deposit with all accumulated interest if Cooper determined not to execute the Membership Transfer Agreement due to a "Due Diligence Issue" as defined in Paragraph 6 of the LOI, if Maxis breached one or more of the binding provisions of the LOI, or if Maxis determined not to proceed to execute the Membership Transfer Agreement. Id.

~~15.~~18. Pursuant to Paragraph 6 of the LOI, Maxis would be given the opportunity to mitigate the problem before Cooper made a final determination not to proceed with the transaction due to Due Diligence Issues. Id.

### Escrow Agreement

~~16.~~19. On September 14, 2017, ~~the Parties~~Maxis and Cooper entered into an Escrow Agreement and designated Bank of America, National Association, as the Escrow Agent to hold the Escrow Fund. Escrow Agreement (Ex. B to Cooper's original Complaint filed December 18, 2017).

~~17.~~20. Pursuant to Section 3.1, the Escrow Agent will disburse funds held in the Escrow Account upon receipt of written notice submitted jointly by Cooper and Maxis ("joint disbursement notice"). Id. § 3.1.

~~18.~~21. Pursuant to Section 3.2, either ~~Party~~Cooper or Maxis (the "Claiming Party") may unilaterally give written notice to the Escrow Agent and the other ~~P~~party requesting a disbursement of all or a portion of the Escrow Fund to it, and must specify in reasonable detail the basis for such distribution ("unilateral disbursement notice"). Id. § 3.2.

~~19.~~22. Upon receipt of a unilateral disbursement notice, the other ~~P~~party may provide notice ("counter notice") to the Claiming Party and Escrow Agent that it is disputing the claim to the Escrow Fund and the issue will be resolved as provided in Section 3.3. Id. § 3.3. If no counter notice is received by the Escrow Agent within ten (10) business days, then the dollar amount of the distribution claimed in the original Notice shall be deemed "established" and the Escrow Agent shall pay the Claiming Party from the Escrow Fund the dollar amount requested in the Notice. Id. § 3.2.

~~20.~~23. Section 3.3, which governs how a disputed claim to the Escrow Fund shall be resolved, provides, in relevant part:

> If a Counter Notice is given with respect to a Claim, the Escrow Agent shall make payment with respect thereto only in accordance with (i) joint written instructions of . . . Cooper and Maxis, or (ii) an order, judgment or decree accompanied by the written certification of the presenting party to the effect that such order is the final, nonappealable ruling of a court of competent jurisdiction, which the presenting party must simultaneously serve upon the other party and the receiving party may dispute by providing evidence to the Escrow Agent within five (5) Business Days, upon which certification Escrow Agent shall conclusively rely without independent verification (a "*Final Order*"). Escrow Agent shall act on a Final Order without further question.
>
> [Id. § 3.3].

21. 24. On September 15, 2017, Cooper deposited $15 million with the Escrow Agent as agreed to in the LOI and specified in Article I, Section (a) of the Escrow Agreement.

### ~~Notice of Due Diligence Issues & Request for Disbursement~~

### Disclosure and/or Discovery of Due Diligence Issues

22. 25. After execution of the LOI on August 31, 2017, Cooper proceeded with the due diligence phase pursuant to Paragraph 4 of the LOI.

23. 26. On November 6, 2017, notably sixty-seven (67) days after execution of the LOI, with only eight (8) days remaining in the due diligence phase, and almost an entire year after the Parties commenced preliminary discussions regarding the Transaction, Maxis and Trinity finally informed Cooper of three (3) matters which constitute Due Diligence Issues under the LOI.

27. At or around the same time, Cooper independently became aware of and notified Maxis and Trinity of two (2) additional matters it discovered during the due diligence phase that likewise constitute Due Diligence Issues under the LOI.

28. The five (5) matters constituting Due Diligence Issues under the LOI, as set forth supra, involve various unlawful and/or improper non-compliance issues, federal audits and investigations, and severe liabilities facing Lourdes and St. Francis, the entities Cooper originally endeavored to acquire as part of the Transaction.

~~24. During the due diligence process, Maxis notified Cooper of three (3) matters which constitute Due Diligence Issues under the LOI, and Cooper notified Maxis of two (2) matters it discovered during the due diligence process that likewise constitute Due Diligence Issues.~~

~~25.~~29. ~~Cooper and Maxis~~ The Parties had multiple communications regarding the Due Diligence Issues.

~~26.~~30. Cooper, in good faith, provided Maxis and Trinity with additional time to mitigate the Due Diligence Issues.

~~27.~~31. Maxis and Trinity could not, did not, and cannot mitigate these Due Diligence Issues.

### Request for Disbursement

~~28.~~32. On December 15, 2017, Cooper advised Maxis that it would not proceed with the Transaction, citing the five (5) Due Diligence Issues falling within the definitions set forth in Paragraphs 6(a), 6(b), and 6(d) of the LOI that were the subject of

prior communications between the Parties. 12/15/17 Letter from Cooper to Maxis (Ex. C to Cooper's original Complaint filed December 18, 2017).

29.33. In the same December 15, 2017 communication, Cooper advised Maxis of certain conduct which constituted a material breach of the LOI. Id.

30.34. Thus, pursuant to Paragraph 6 of the LOI, Cooper is entitled to a return of the $15 million being held in escrow, together with all accumulated interest.

31.35. Cooper, by way of its December 15, 2017 letter, provided written notice to Maxis requesting a disbursement of all of the Escrow Fund to it, and specified in reasonable detail the basis for such distribution under the LOI. Id.

32.36. Cooper requested that Maxis sign a joint disbursement request for submission to the Escrow Agent as set forth in Section 3.1 of the Escrow Agreement. Id.

33.37. On December 18, 2017, Maxis notified Cooper that it will not execute a joint disbursement request and that it contests Cooper's right to return of the Escrow Fund. 12/18/17 E-mail from Maxis to Cooper (Ex. D to Cooper's original Complaint filed December 18, 2017).

### COUNT I – DECLARATORY JUDGMENT
### (MaxisDeclaratory Judgment)

34.38. Plaintiff Cooper incorporates each of the allegations in the preceding paragraphs paragraphs 1 through 29 of this Complaint as if fully set forth herein.

35.39. There now exists an actual, justiciable controversy between CooperPlaintiff and Maxis Defendant concerning Cooper's entitlement to the Escrow Fund, to which the PartiesCooper and Maxis have a direct interest, and the operative facts are not future, contingent, or uncertain.

**WHEREFORE**, Plaintiff, The Cooper Health System, requests a declaratory judgment against Defendant, Maxis Health System:

i. declaring that Cooper~~Plaintiff~~ is entitled to a return of the $15 million being held in escrow, together with all accumulated interest;

ii. declaring that Maxis~~Defendant~~ is not entitled to any portion of the $15 million being held in escrow;

iii. ordering the Escrow Agent to disburse the $15 million being held in escrow, together with all accumulated interest, to Cooper;

iv. awarding Cooper~~Plaintiff~~ the costs of this action, including attorneys' fees; and

v. awarding Cooper~~Plaintiff~~ such other and further relief as the Court deems just and proper.

### COUNT II – COMMON LAW FRAUD, FRAUDULENT MISREPRESENTATION, AND/OR FRAUD IN THE INDUCEMENT
### (Maxis and Trinity)

40. Cooper incorporates each of the allegations in the preceding paragraphs as if fully set forth herein.

41. The Parties commenced discussions in or around December 2016 regarding the Transaction. Nevertheless, until November 6, 2017, notably sixty-seven (67) days after execution of the LOI, with only eight (8) days remaining in the due diligence phase, and almost an entire year after the Parties commenced preliminary discussions regarding the Transaction, Maxis and Trinity fraudulently failed to disclose to Cooper at least five (5) matters which constitute Due Diligence Issues under the LOI, as set forth *supra*. Moreover, two (2) of the matters which constitute Due Diligence Issues under the LOI were only discovered by way of Cooper's thorough and careful

investigation, and in spite of Maxis and Trinity's fraudulent failure to disclose such matters.

42. Maxis and Trinity failed to disclose the Due Diligence Issues to Cooper without justification or excuse and with the willful and malicious intent to defraud Cooper and benefit themselves. In particular, Maxis and Trinity intended to induce Cooper into investigating the acquisition of Lourdes and St. Francis—by conducting due diligence, accounting, and other extensive pre-closing procedures—and ultimately acquiring such damaged entities.

43. Cooper justifiably relied on Maxis and Trinity's material omissions, entered into the LOI with Maxis, investigated the acquisition of Lourdes and St. Francis, and incurred substantial expenses in furtherance of the Transaction.

44. Had the Due Diligence Issues been promptly disclosed and/or disclosed within a reasonable timeframe, Cooper would not have entered into the LOI with Maxis, would not have investigated the acquisition of Lourdes and St. Francis, and would not have incurred substantial expenses in furtherance of the Transaction. Fortunately, Cooper became aware of the Due Diligence Issues before the Transaction closed, thus avoiding yet further damages.

45. Maxis and Trinity's actions constitute common law fraud, fraudulent misrepresentation, and/or fraud in the inducement.

46. As a result of its justifiable reliance, Cooper incurred at least $5 million as direct and proximate damages.

**WHEREFORE**, Plaintiff, The Cooper Health System, demands judgment against Defendants, Maxis Health System and Trinity Health, for compensatory damages, punitive damages, attorneys' fees, costs of suit, and any other relief that the Court deems equitable and just.

### COUNT III – NEGLIGENT MISREPRESENTATION
### (Maxis and Trinity)

47. Cooper incorporates each of the allegations in the preceding paragraphs as if fully set forth herein.

48. The Parties commenced discussions in or around December 2016 regarding the Transaction. Nevertheless, until November 6, 2017, notably sixty-seven (67) days after execution of the LOI, with only eight (8) days remaining in the due diligence phase, and almost an entire year after the Parties commenced preliminary discussions regarding the Transaction, Maxis and Trinity fraudulently failed to disclose to Cooper at least five (5) matters which constitute Due Diligence Issues under the LOI, as set forth *supra*. Moreover, two (2) of the matters which constitute Due Diligence Issues under the LOI were only discovered by way of Cooper's thorough and careful investigation, and in spite of Maxis and Trinity's fraudulent failure to disclose such matters.

49. Maxis and Trinity failed to disclose the Due Diligence Issues to Cooper without justification or excuse.

50. Maxis and Trinity should reasonably have known that they had a duty to promptly disclose and/or disclose within a reasonable timeframe the Due Diligence Issues to Cooper.

51. Cooper justifiably relied on Maxis and Trinity's material omissions, entered into the LOI with Maxis, investigated the acquisition of Lourdes and St. Francis, and incurred substantial expenses in furtherance of the Transaction.

52. Had the Due Diligence Issued been promptly disclosed and/or disclosed within a reasonable timeframe, Cooper would not have entered into the LOI with Maxis, would not have investigated the acquisition of Lourdes and St. Francis, and would not have incurred substantial expenses in furtherance of the Transaction. Fortunately, Cooper became aware of the Due Diligence Issues before the Transaction closed, thus avoiding yet further damages.

53. As a result of its justifiable reliance, Cooper incurred at least $5 million as direct and proximate damages.

**WHEREFORE**, Plaintiff, The Cooper Health System, demands judgment against Defendants, Maxis Health System and Trinity Health, for compensatory damages, attorneys' fees, costs of suit, and any other relief that the Court deems equitable and just.

## DESIGNATION OF TRIAL COUNSEL

William M. Tambussi, Esquire is hereby designated as trial counsel for Plaintiff in the above-captioned matter on all claims.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in the above-captioned matter on all claims.

                                                       **BROWN & CONNERY, LLP**
                                                       *Counsel for The Cooper Health System*

Dated:                                      By: _____
                                                      William M. Tambussi, Esquire
                                                      Joseph T. Carney, Esquire
                                                      Jonathan L. Triantos, Esquire
                                                      360 Haddon Avenue
                                                      Westmont, New Jersey 08108
                                                      Phone: (856) 854-8900
                                                      Fax: (856) 858-4967
                                                      Email: wtambussi@brownconnery.com
                                                      Email: jcarney@brownconnery.com
                                                      Email: jtriantos@brownconnery.com

## **CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

I hereby certify that the matter in controversy in this action is not the subject of any other action pending or contemplated in any court, or of any pending or contemplated arbitration or administrative proceeding. I further certify that there are no additional known parties who should be joined in the present action at this time.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I may be subject to punishment.

**BROWN & CONNERY, LLP**
*Counsel for The Cooper Health System*

Dated:            By: _____
                       William M. Tambussi, Esquire