Christopher J. Dalton
Argia J. DiMarco
**BUCHANAN INGERSOLL & ROONEY PC**
Incorporated in Pennsylvania
550 Broad Street, Suite 810
Newark, New Jersey 07102-4582
Phone:  (973) 273-9800

Gerald E. Burns (*pro hac vice*)
Samantha L. Southall (*pro hac vice*)
**BUCHANAN INGERSOLL & ROONEY PC**
Incorporated in Pennsylvania
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
Phone:  (215) 665-3884

*Attorneys for Maxis Health System
and Trinity Health*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE COOPER HEALTH SYTEM, A NEW JERSEY NON-PROFIT CORPORATION,<br>   *Plaintiff*,<br> v.<br>MAXIS HEALTH SYSTEM,<br>   *Defendant*. | Case No.  1:18-cv-00702-RMB-AMD<br><br>Civil Action |
| MAXIS HEALTH SYSTEM and TRINITY HEALTH CORPORATION,<br>   *Counterclaim Plaintiffs*,<br> v.<br>THE COOPER HEALTH SYSTEM,<br>   *Counterclaim Defendant*. | **ANSWER TO THE<br>FIRST AMENDED COMPLAINT<br>WITH AFFIRMATIVE DEFENSES<br>AND COUNTERCLAIM** |

Defendant Maxis Health System ("Maxis") hereby answers the First Amended Complaint of Plaintiff The Cooper Health System ("Cooper") as follows:

1. Denied. The averments contained in this paragraph are statements of Cooper's claim, as to which no response is required. To the extent that a response is required, Maxis denies the averments in this paragraph and denies that Cooper is entitled to any relief on its Complaint.

2. Denied. The averments contained in this paragraph are statements of Cooper's claim, as to which no response is required. To the extent that a response is required, Maxis denies the averments in this paragraph and denies that Cooper is entitled to any relief on its Complaint. In further answer, the Court denied Cooper's Motion to Amend its Complaint which sought to add the claim described in this paragraph.

3. Admitted on information and belief.

4. Admitted in part, denied in part. Maxis denies that its principal place of business is in the Commonwealth of Pennsylvania. Maxis admits the remaining averments contained in this paragraph.

5. The averments contained in this paragraph constitute a legal conclusion, as to which no response is required. To the extent that a response is required, Maxis admits that this Court has subject matter jurisdiction over this case.

6. The averments contained in this paragraph constitute a legal conclusion, as to which no response is required. To the extent that a response is required, Maxis admits only that this Court has personal jurisdiction over Maxis in this case.

7. The averments contained in this paragraph constitute a legal conclusion, as to which no response is required. To the extent that a response is required, Maxis admits only that venue is proper in this Court.

8. Admitted in part, denied in part. Maxis admits only that it had some preliminary

discussions regarding a potential transaction with Cooper around December 2016. Maxis denies the remaining averments contained in this paragraph.

9. Admitted in part, denied in part. Maxis admits that it continued discussions with Cooper regarding a potential transaction between December 2016 through August 2017. Maxis denies the remaining averments contained in this paragraph.

10. Admitted in part, denied in part. Maxis admits only that the document attached as Exhibit A to the original Complaint filed by Cooper on December 18, 2017 (the "Original Complaint") is a Letter of Intent (the "LOI") that was executed by Maxis and Cooper on August 30, 2017. Maxis denies the remaining averments contained in this paragraph on the grounds that they paraphrase or characterize the LOI, which is in writing and speaks for itself.

11. Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the LOI, which is in writing and speaks for itself.

12. Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the LOI, which is in writing and speaks for itself.

13. Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the LOI, which is in writing and speaks for itself.

14. Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the LOI, which is in writing and speaks for itself.

15. Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the LOI, which is in writing and speaks for itself.

16. Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the LOI, which is in writing and speaks for itself.

17. Denied. Maxis denies the averments contained in this paragraph on the grounds

that they paraphrase or characterize the LOI, which is in writing and speaks for itself.

18. Admitted in part, denied in part. Maxis admits only that the document attached as Exhibit B to the Original Complaint is an Escrow Agreement (the "Escrow Agreement") executed by Maxis, Cooper, and Bank of America, National Association, and dated September 14, 2017. Maxis denies the remaining averments contained in this paragraph on the grounds that they paraphrase or characterize the Escrow Agreement, which is in writing and speaks for itself.

19. Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the Escrow Agreement, which is in writing and speaks for itself.

20. Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the Escrow Agreement, which is in writing and speaks for itself.

21. Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the Escrow Agreement, which is in writing and speaks for itself.

22. Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the Escrow Agreement, which is in writing and speaks for itself.

23. Admitted in part, denied in part. Maxis admits only that Cooper deposited $15 million with the Escrow Agent on or about September 15, 2017. Maxis denies the remaining averments contained in this paragraph on the grounds that they paraphrase or characterize the LOI and the Escrow Agreement, which are in writing and speak for themselves.

24. Admitted in part, denied in part. Maxis admits only that, after the parties

executed the LOI, they engaged in due diligence. Maxis denies the remaining averments contained in this paragraph on the grounds that they paraphrase or characterize the LOI, which is in writing and speaks for itself.

25.  Denied.

26.  Denied.

27.  Denied.

28.  Admitted in part, denied in part. Maxis admits only that Cooper communicated with Maxis regarding the issues that Cooper claims are Due Diligence Issues, as that term is defined in the LOI. Maxis denies that any of the items identified by Cooper are Due Diligence Issues under the LOI.

29.  Denied.

30.  Denied.

31.  Admitted in part, denied in part. Maxis admits only that the document attached as Exhibit C to the Original Complaint is a letter dated December 15, 2017 from Cooper (the "Termination Letter"). Maxis denies the remaining averments contained in this paragraph on the grounds that they paraphrase or characterize the Termination Letter, which is in writing and speaks for itself. Maxis denies that any of the items identified by Cooper in the Termination Letter are Due Diligence Issues under the LOI, and denies that Cooper provided Maxis with notice and an opportunity to mitigate the purported Due Diligence Issues, as was required under the LOI.

32.  Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the Termination Letter, which is in writing and speaks for itself. Maxis further denies that it breached the LOI.

33. Denied.

34. Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the Termination Letter, which is in writing and speaks for itself. Maxis further denies that Cooper is entitled to a disbursement of the Escrow Fund.

35. Denied. Maxis denies the averments contained in this paragraph on the grounds that they paraphrase or characterize the Termination Letter, which is in writing and speaks for itself. Maxis further denies that Cooper is entitled to a disbursement of the Escrow Fund.

36. Admitted in part, denied in part. Maxis admits that the document attached as Exhibit D to the Original Complaint is an email dated December 18, 2017 from Maxis. Maxis denies the remaining averments contained in this paragraph on the grounds that they paraphrase or characterize the December 18, 2017 email, which is in writing and speaks for itself.

## COUNT I – DECLARATORY JUDGMENT

37. Maxis incorporates herein by reference Paragraphs 1 through 36 of its Answer as if the same were fully set forth at length.

38. Denied. The averments contained in this paragraph constitute conclusions of law as to which no response is required. To the extent that a response is required, Maxis denies the averments contained in this paragraph and denies that Cooper is entitled to any relief on its Complaint.

WHEREFORE, defendant, Maxis Health System, hereby demands judgment in its favor dismissing all of Cooper's claims with prejudice, along with such other relief as is proper, including but not limited to attorney's fees and costs.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a cause of action upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Cooper's claims are barred by the doctrine of unclean hands.

**THIRD AFFIRMATIVE DEFENSE**

Cooper's claims are barred by Cooper's breaches of the parties' agreements, including the LOI and the Confidentiality Agreement.

**FOURTH AFFIRMATIVE DEFENSE**

Cooper's claims are barred because Cooper failed to comply with the terms of the LOI by, *inter alia*, failing to provide Maxis with notice and an opportunity to mitigate the alleged Due Diligence Issues, the existence of which is denied.

**FIFTH AFFIRMATIVE DEFENSE**

Cooper's claims are barred by the doctrines of waiver and/or estoppel.

**SIXTH AFFIRMATIVE DEFENSE**

Cooper's claims are barred, in whole or in part, by the doctrine of set-off.

**SEVENTH AFFIRMATIVE DEFENSE**

Cooper's claims are barred by the doctrine of failure of consideration.

**EIGHTH AFFIRMATIVE DEFENSE**

Any performance or payment demanded by Cooper of Maxis is excused by Cooper's breaches of contract and failure of performance.

**NINTH AFFIRMATIVE DEFENSE**

Cooper's claims fail because Maxis did not breach the LOI.

**TENTH AFFIRMATIVE DEFENSE**

Cooper's claims fail because Cooper did not identify any Due Diligence Issue under the LOI.

**ELEVENTH AFFIRMATIVE DEFENSE**

In addition to the enumerated defenses set forth herein, Maxis reserves the right to raise any additional defenses that may become available or appropriate.

WHEREFORE, defendant, Maxis Health System, hereby demands judgment in its favor dismissing all of Cooper's claims with prejudice, along with such other relief as is proper, including but not limited to attorney's fees and costs.

**COUNTERCLAIM**

Counterclaim Plaintiffs Maxis Health System and Trinity Health Corporation hereby state their Counterclaim against Counterclaim Defendant The Cooper Health System, as follows:

**Parties**

1. Counterclaim Plaintiff Maxis Health System ("Maxis") is a nonprofit corporation incorporated under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 20555 Victor Parkway, Livonia, Michigan.

2. Counterclaim Plaintiff Trinity Health Corporation ("Trinity") is a nonprofit corporation incorporated under the laws of the State of Michigan, within its principal place of business at 20555 Victor Parkway, Livonia, Michigan.

3. Counterclaim Defendant The Cooper Health System ("Cooper") is a New Jersey non-profit corporation with its principal place of business at One Cooper Plaza, Camden, NJ 08012.

**Jurisdiction and Venue**

4. The Court has personal jurisdiction over Cooper because Cooper regularly conducts business within New Jersey and within this District.

5. The Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the

amount in controversy exceeds $75,000.00, exclusive of interest and costs. The Court also has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367, as the Counterclaim is so related to Cooper's claims in this case that are within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**The Parties' Agreements**

6. Maxis is a wholly-owned subsidiary of Trinity.

7. Maxis is the sole member of two nonprofit corporations, Our Lady of Lourdes Health Care Services, Inc. ("Lourdes") and St. Francis Medical Center ("St. Francis").

8. Lourdes and St. Francis operate hospitals in the City of Camden, New Jersey.

9. Cooper and Maxis are competitors in the healthcare and hospital market in Southern New Jersey.

10. Cooper, Trinity, and Maxis entered into several agreements relating to a potential transaction between the parties (the "Transaction"). The basic structure of the Transaction involved the transfer of Maxis' interests in Lourdes and St. Francis to Cooper.

11. The agreements executed by the parties relating to the Transaction included:

   a. A Letter of Intent between Maxis and Cooper dated August 30, 2017 (the "LOI");

   b. An Escrow Agreement between Maxis, Cooper and Bank of America, National Association, made as of September 14, 2017 (the "Escrow Agreement"); and

   c. A Confidentiality and Non-Disclosure Agreement dated December 13, 2016 (the "Confidentiality Agreement"), entered into between Cooper and Trinity,

on behalf of itself and its affiliates, including Maxis.

12. The Confidentiality Agreement was intended to permit the free exchange of information among Cooper, Trinity, and Maxis related to the Transaction.

13. In the Confidentiality Agreement, Cooper acknowledged that the Information (as defined in the Confidentiality Agreement) that would be provided by Trinity and Maxis in connection with the Transaction was confidential and of great value to Trinity and Maxis.

14. Cooper agreed in the Confidentiality Agreement that all Information that it received from Trinity and Maxis would be used solely for the purpose of evaluating the potential Transaction and would be kept confidential.

15. Cooper also agreed that, except as provided in the Confidentiality Agreement, it would not disclose any of the Information to any person without Trinity's prior written authorization, with the exception of disclosures to certain authorized recipients that are not applicable here.

16. In addition, Paragraph 3 of the Confidentiality Agreement required Cooper to certify in writing at the request of Trinity and Cooper that Cooper has (a) destroyed all copies, extracts or other reproductions in whole or in part of the Information in the possession of Cooper and (b) destroyed or cause to be destroyed all copies of any memoranda, notes, analyses or other documents prepared by Cooper for its use based on, containing or reflecting any Information.

### Cooper's Breaches of the Confidentiality Agreement

17. On December 18, 2017, Cooper filed a Complaint against Maxis in the Superior Court of New Jersey, Camden County, Law Division, Docket No. L-004842-17.

18. Cooper attached to its Original Complaint, as Exhibit C, a letter dated December 15, 2017, from its General Counsel, Gary Lesneski, to Michael Hemsley of Trinity (the

"Termination Letter").

19. The Termination Letter included and disclosed confidential Information, as that term is defined in the Confidentiality Agreement.

20. The Information that Cooper disclosed in the Termination Letter was received by Cooper pursuant to the Confidentiality Agreement.

21. The Termination Letter gave an incomplete account of the confidential Information, and inaccurately portrayed that Information as providing a basis for Cooper to terminate the Transaction and recover its $15 million Escrow Deposit.

22. By attaching the Termination Letter to its publicly-filed Original Complaint, Cooper violated the Confidentiality Agreement by disclosing Information that it had obtained pursuant to the Confidentiality Agreement.

23. On December 19, 2017, immediately upon learning of Cooper's public filing of the Termination Letter, Maxis demanded that Cooper withdraw the filing, or file the Termination Letter under seal. Cooper refused to do so.

24. Before Maxis could seek an order of Court sealing the Information that Cooper had filed with the Original Complaint, or obtain an appropriate protective order, one or more media outlets learned of the filing of Cooper's Complaint and obtained a copy thereof. By that point, it was too late for Maxis to take effective action to rectify Cooper's improper and incomplete public disclosure of the Information.

25. The Philadelphia Inquirer reported a story on Cooper's Complaint online on the evening of December 19, 2017 and in print on December 20, 2017.

26. Cooper was not required by law or rule of court to attach the Termination Letter to its Original Complaint.

27. Even if Cooper believed that it was required by law to file the Termination Letter with the Original Complaint, the Confidentiality Agreement provided a mechanism by which Cooper was required to give written notice to Trinity of its intent to disclose the Information so as to allow Trinity to seek a protective order or otherwise consult with Cooper.

28. Cooper failed to provide any prior written notice to Trinity of its intent to publicly file the Termination Letter that was attached to the Original Complaint.

29. Cooper did not obtain a written opinion of its legal counsel that it was compelled to either disclose confidential Information in the Original Complaint or stand liable for contempt or suffer other censure or penalty.

30. As a competitor of Trinity and Maxis, Cooper knew that publicly disclosing its inaccurate and incomplete portrayal of the confidential Information in the Termination Letter would harm Trinity and Maxis competitively and economically.

31. On December 22, 2017, Trinity and Maxis' counsel wrote to Cooper's counsel and requested that Cooper certify that it had complied with Paragraph 3 of the Confidentiality Agreement. Cooper did not respond to this letter and did not provide the certification required by Paragraph 3 of the Confidentiality Agreement.

32. In its May 23, 2018 Responses to the First Set of Interrogatories from Maxis, Cooper again refused to certify that it complied with the Paragraph 3 of the Confidentiality Agreement.

33. In the fall of 2018, Trinity learned that Cooper, either directly or through a joint venture with another entity, was recruiting cardiologists from Lourdes. Trinity became concerned that Cooper may use Due Diligence Information, as that term is defined in the Confidentiality Agreement, to recruit these physicians.

34. On October 3, 2018, Trinity and Maxis' wrote to Cooper to remind Cooper of its obligations under the Confidentiality Agreement, and to again request that Cooper certify that it had complied with Paragraph 3 of the Confidentiality Agreement. Cooper did not respond to this letter and did not provide the required certification.

35. As a direct result of Cooper's breach of the Confidentiality Agreement, Trinity and Maxis were and continue to be competitively and economically harmed.

## **COUNTERCLAIM COUNT ONE – BREACH OF CONTRACT**

36. Trinity and Maxis incorporate herein by reference paragraphs 1 through 35 of their Counterclaim as if the same were fully set forth at length.

37. The Confidentiality Agreement is a valid and binding contract between Cooper and Trinity, on behalf of itself and its affiliates, including Maxis.

38. The Confidentiality Agreement was in effect on December 18, 2017, when Cooper filed its Complaint against Maxis.

39. Trinity, on behalf of itself and its affiliates, including Maxis, complied with its obligations under the Confidentiality Agreement.

40. Cooper materially breached the Confidentiality Agreement by publicly filing the Termination Letter, which included confidential Information subject to the Confidentiality Agreement, with its Complaint.

41. Cooper further materially breached the Confidentiality Agreement by refusing to certify that it had complied with paragraph 3 of the Confidentiality Agreement.

42. Cooper's breach of the Confidentiality Agreement proximately caused harm to Trinity and Maxis, in an amount to be determined at trial but in excess of $75,000.00

WHEREFORE, Counterclaim Plaintiffs, Trinity Health and Maxis Health System, demand judgment in their favor and against Counterclaim Defendant, The Cooper Health

System, in an amount excess of $75,000.00, together with such other relief as the Court deems proper, including attorneys' fees and costs.

Dated:  December 10, 2018         **BUCHANAN INGERSOLL & ROONEY, PC**

*Attorneys for Defendant Maxis Health System and Counterclaim Plaintiff Trinity Health*

 /s/  Christopher J. Dalton
Christopher J. Dalton
Argia J. DiMarco
**BUCHANAN INGERSOLL & ROONEY PC**
550 Broad Street, Suite 810
Newark, NJ 07102-4582
Phone:  (973) 273-9800

Gerald E. Burns (*pro hac vice)*
Samantha L. Southall *(pro hac vice)*
**BUCHANAN INGERSOLL & ROONEY PC**
Two Liberty Place
50 S. 16th St., Suite 3200
Philadelphia, PA 19102-2555
Phone:  (215) 665-8700

14

## **CERTIFICATE OF SERVICE**

I, Christopher J. Dalton, hereby certify that on this 10th day of December, 2018, a true and correct copy of the foregoing Answer to the First Amended Complaint and Counterclaim was served via the Court's ECF filing system upon all counsel of record:

William M. Tambussi
Jonathan L. Triantos
**BROWN & CONNERY, LLP**
360 Haddon Avenue
Westmont, NJ 08108

*Attorneys for Plaintiff/Counterclaim Defendant
The Cooper Health System*

  /s/  Christopher J. Dalton
Christopher J. Dalton